WILLIAM D. DIXEY ET AL., PROSECUTORS, v. ATLANTIC CITY AND DELAWARE RIVER QUARRY AND CONSTRUCTION COMPANY.

Argued February 18, 1904—Decided June 13, 1904.

1. Under "An act relating to, regulating and providing for the government of cities" (*Pamph. L.* 1902, *p.* 284), it is not necessary that the municipal authorities have in hand a fund to pay for paving streets before authorizing such improvement.
2. In the case in hand, the bid of the defendant company was within the advertised specifications.

On *certiorari.*

Before Justices FORT and GARRETSON.

For the prosecutors, *Thompson & Cole.*

For Atlantic City, *Harry Wootton.*

For the Delaware River Quarry and Construction Company, *Godfrey & Godfrey* and *John Rellstab.*

The opinion of the court was delivered by

GARRETSON, J. The *certiorari* in this case brings up the action of the city council of Atlantic City in awarding to the Delaware River Quarry and Construction Company a contract to pave certain streets in said city, as well as the ordinance relative thereto and all proceedings leading up to said action.

The prosecutors are two taxpayers of said city, who, with a third person, constitute a firm which was one of the unsuccessful bidders for said contract.

Atlantic City, by an ordinance passed November 9th, 1903, entitled "An ordinance to provide for the improvement of" a large number of streets and avenues—specifying them by name—ordained, in the first section thereof, that certain of

these streets and avenues, for the full width of said streets between the curb lines thereof, including that portion of the roadways of all intersecting streets or alleys included within the property lines of the avenues above mentioned, be paved with broken stone with repressed vitrified fire clay blocks, gutters with stone curbs and all necessary inlets and drains, and that certain others for the full width as above be paved with repressed vitrified fire clay blocks with stone curbs and all necessary inlets and drains. It was provided by section 3 of the ordinance that so much of the cost and expenses of such improvement as represents the special and peculiar benefits conferred upon the owners of land and real estate benefited thereby be assessed thereon in proportion to the special and peculiar benefits each shall be deemed to acquire, the assessment to be made by commissioners to be appointed by a justice of the Supreme Court.

Authority for the passage of the foregoing ordinance is found in "An act relating to, regulating and providing for the government of cities," approved April 3d, 1902. *Pamph. L., p.* 284, § 66. Article 3 of that act authorizes the city council to order and cause any street or section of a street to be graded, graveled, paved, flagged or otherwise improved and regulated in such manner as they may deem advisable, and to cause to be assessed the cost and expenses of such improvement upon the owner or owners benefited thereby—no assessment, however, to exceed benefits. Provision is made in section 87 for the appointment by a justice of the Supreme Court of commissioners to make assessments for benefits. By section 94, the excessive cost above benefits is to be paid by the city and provided for by general taxation. By section 105 the city is authorized to issue bonds and out of the proceeds pay for any improvements authorized by the act, and if, for any purpose authorized by the act, any part of the cost and expenses of which is authorized to be assessed upon the property benefited, the assessment for benefits in every such case shall be exclusively appropriated for the redemption of the bonds so issued, and are required to be kept separate from the other funds of such city and devoted exclusively to their use.

By section 105 the city council is authorized to negotiate temporary loans for a period not exceeding two years in anticipation of assessments for paving streets, &c.

It is alleged, as a reason against the validity of the proceedings of the council, that at the time of the award of the contract Atlantic City was without any appropriation to pay the contract price for the improvements proposed, and without power to issue bonds to raise the necessary sum, and founds this objection upon the case of *Hurley* v. *Trenton*, 37 *Vroom* 538, and *Niles* v. *Board of Education*, 41 *Id.* 1. But we think that neither of these cases is applicable to the situation in question.

In Hurley *v.* Trenton, the contract attacked was for repaving certain streets, and was claimed to be authorized under an act of March 2d, 1898, entitled "An act providing for the repavement of paved streets in cities of this state, and for the issuance of bonds in payment therefor." *Pamph. L., p.* 43. The act authorizes the issuance and sale of bonds and enacts that the proceeds of the bonds shall be used to pay the costs thereafter incurred by the city in the repavement of any street or streets which the city authorities should thereafter decide to so repave out of said fund. The court held in that case that it was clear, from the language used in the statute, that before the council could contract for repaving of streets, the costs and expenses of which must be paid out of a fund from the proceeds of the sale of bonds issued by the city under the act of 1898, that the fund must be in hand. There was in this case no provision for assessment for benefits.

In *Niles* v. *Board of Education, supra,* a contract to purchase lands for a school site was held awarded under an act of the legislature authorizing a town council, on certificate of the board of education that additional school accommodations are needed, to make an appropriation therefor and sell bonds, for not less than their par value, and giving it power to purchase lands after such appropriation, expending no more than the amount realized from the sale of bonds, because it was attempted to purchase lands after the appropriation, but before sale of the bonds.

The scheme of street improvement under the act of 1902 is substantially that in practice in the various municipalities acting under special charters. There is a determination to make the improvement, an assessment for benefits authorized and provision for payment by raising money on temporary loans; in some cases improvement certificates, redeemable at some short period, being authorized instead of temporary loans, and it has never been regarded as necessary in such cases that the money be in hand to pay for such improvements before the contract to make them was entered into.

A reason urged for setting aside the contract is that the successful bid was not in accordance with the following clause in the specifications referring to the kind of paving block to be used: "The bidder must deposit with the city engineer, before five o'clock P. M. Monday, December 28th, 1903, two (2) sample paving blocks of the kind he proposes to furnish, and of the size and quality described in the specifications, labelled with the name of the bidder and the place of manufacture. Each bidder may submit samples of more than one kind of block proposed to be furnished at the one price bid, but with the understanding that the street committee shall make the selection." The successful bidder submitted its proposal for paving blocks in this form:

"Pennsylvania Clay Company, Rochester, Penna. Two dollars and seven cents ($2.07).

"Reese & Hammond Fire Brick Co., Bolivar, Pa. One dollar and ninety-seven cents ($1.97).

"American Sewer Pipe Co., New Cumberland, W. Va. One dollar and ninety-seven cents ($1.97).

"Mack Manufacturing Co., New Cumberland, W. Va. Two dollars and twenty-five cents ($2.25).

"Clearfield Brick Co., Clearfield, Pa. Two dollars and twenty-five cents ($2.25)."

The prosecutors, Dixey and others, submitted their bid in this form: "For each square yard of block pavement, including concrete foundation and excavation, one dollar and ninety-nine cents ($1.99)."

The defendant bidder, to whom the contract was awarded, was the lowest bidder, and the block selected was the block of the American Sewer Pipe Company.

The prosecutor bidder submitted a sample of the same kind of block, but claims that no more than one price could be submitted by any one bidder for block pavement because of the language of the specifications; and that each bidder, who might be enabled to procure blocks of different manufacturers at different prices, could take the average price of these and furnish as a sample any of the blocks entering into the average; this might result in furnishing as a sample the lowest price block which was used in making the average, and the city would not have the advantage of the knowledge of the difference in price of the various blocks offered by different bidders. The bid of the successful bidder gave the city the advantage of knowing just what were high and what low price blocks, and we think the specifications did not limit bidders to naming blocks of only one price, but permitted them to bid for different kinds of blocks at different prices, and if they were able to furnish more than one kind of block at the same price they might do that, also submitting samples and the information as to manufacturer required.

We find no reason for setting aside the proceedings, and the same are affirmed, with costs.